# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
## Judge Robert E. Blackburn

Civil Action No. 12-cv-02334-REB

ALTHEA YVONNE BARNHILL,

      Plaintiff,

v.

CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security,

      Defendant.

---

## ORDER AFFIRMING COMMISSIONER

---

**Blackburn, J.**

      The matter before me is plaintiff's **Complaint** [#1], filed August 31, 2012, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*  I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).  The matter has been fully briefed, obviating the need for oral argument.  I affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

      Plaintiff alleges that she is disabled as a result of coronary artery disease, chronic obstructive pulmonary disease, asthma, degenerative disc disease, degenerative joint disease, obesity, and headaches.  After her application for disability insurance benefits was denied, plaintiff requested a hearing before an administrative

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, and thus her name is substituted for that of Michael J. Astrue as the defendant in this suit.  **FED. R. CIV. P.** 25(d)(1).  By virtue of the last sentence of 42 U.S.C. § 405(g), no further action need to taken to continue this lawsuit.

law judge.  This hearing was held on July 16, 2010.  At the time of the hearing, plaintiff

was 54 years old.  She has an twelfth grade education and past relevant work

experience as a call center manager, quality assurance coordinator, mail room clerk,

packager, and telephone sales representative.  She has not engaged in substantial

gainful activity since July 8, 2005, her alleged date of onset.  Plaintiff's date last insured

was December 31, 2009.

The ALJ found that plaintiff was not disabled and therefore not entitled to

disability insurance benefits.  Although the medical evidence established that plaintiff

suffered from severe impairments, the judge concluded that the severity of those

impairments did not meet or equal any impairment listed in the social security

regulations.  Other impairments, including most particularly headaches, were found not

severe.  The ALJ found that plaintiff had the residual functional capacity to perform light

work with certain postural and environmental limitations.  Based on this finding, the ALJ

concluded that plaintiff could return to her past relevant work.  He therefore found

plaintiff not disabled at step four of the sequential evaluation.  Plaintiff appealed this

decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in

federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her

physical and/or mental impairments preclude her from performing both her previous

work and any other "substantial gainful work which exists in the national economy."  42

U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social

Security [Act] requires the [Commissioner] to consider the combined effects of the

2

impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  ***See Kelley v. Chater,*** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1.  The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.  The ALJ  must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3.  The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4.  If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5.  If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f).  ***See also Williams v. Bowen*** 844 F.2d 748, 750-52 (10th

Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four

steps of this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294

n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that

the claimant is capable of performing work in the national economy.  *Id.*  A finding that

the claimant is disabled or not disabled at any point in the five-step review is conclusive

and terminates the analysis.  *Casias v. Secretary of Health & Human Services*, 933

F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining

whether the ALJ applied the correct legal standard and whether the decision is

supported by substantial evidence.  *Hamilton v. Secretary of Health and Human*

*Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194,

1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would

accept as adequate to support a conclusion.  *Brown*, 912 F.2d at 1196.  It requires

more than a scintilla but less than a preponderance of the evidence.  *Hedstrom v.*

*Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is

overwhelmed by other evidence in the record or constitutes mere conclusion."

*Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed

to apply the correct legal test, there is a ground for reversal apart from a lack of

substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

Although a reviewing court should meticulously examine the record, it may not reweigh

the evidence or substitute its discretion for that of the Commissioner.  *Id.*

4

### III.  LEGAL ANALYSIS

Plaintiff claims the ALJ erred in weighing the competing medical opinions of record, which in turn allegedly undermines his residual functional capacity assessment. Plaintiff further contends the ALJ improperly discredited her reports of disabling headaches.  Finding no such reversible error in the ALJ's opinion, I affirm.

Plaintiff first faults the ALJ for discrediting and assigning little weight to the opinions of her treating sources and instead relying on the opinion of the consultative examiner and the state agency physicians in formulating her residual functional capacity.  The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record."  20 C.F.R. § 404.1527(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  A treating source opinion cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision.  *Watkins*, 350 F.3d at 1301.  Good cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence.  *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

Nevertheless, even if a treating source opinion is not accepted, "[t]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  **Social Security Ruling 96-8p**, 1996 WL 374184 at *7 (SSA July 2, 1996).  Despite the deference usually afforded treating

source opinions, however, they are not sacrosanct, and "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." **Social Security Ruling 96-6p**, 1996 WL 374180 at *3 (SSA July 2, 1996).

Dr. Karen Radley, plaintiff's regular family doctor, completed three different residual functional capacity assessments.  In March 2008, Dr. Radley suggested that plaintiff would be required to lie or recline for two hours in an eight-hour workday, could sit for up to 60 minutes at a time up to four hours a day, could stand and walk for no more than 10 minutes at a time, and could occasionally lift 10 pounds.  She also suggested that plaintiff would be absent from work more than four times a month due to her impairments.  (Tr. 406-407.)  Less than six weeks later, Dr. Radley opined that plaintiff could sit for no more than 30 minutes at a time for no more than two hours in an eight-hour workday, and could occasionally lift up to 20 pounds.  (Tr. 402-404.)  A separate assessment dated that same day, however, states that plaintiff could stand less than two hours a day, could sit for about two hours a day, and must lay or recline for about four hours a day.  Dr. Radley further suggested that plaintiff might be expected to be incapacitated following an asthma attack for up to two weeks.  (Tr. 409-411.)

The ALJ found these restrictions incompatible with the medical and other evidence of record.  I can find no reversible error in that determination.  The ALJ thoroughly discussed the medical evidence of record, pointing to repeated instances in which plaintiff's various conditions were found to be mild or the medical findings otherwise benign.  (Tr. 21-23.)  Plaintiff suggests that the ALJ failed, in addition, to

6

discuss the evidence that supported Dr. Radley's opinions.  However, the ALJ is not required to "discuss every piece of evidence."  *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007).  Instead, the ALJ's opinion is adequate "if it discusses the 'uncontroverted evidence' the ALJ chooses not to rely upon and any 'significantly probative evidence' the ALJ decides to reject."  *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) (internal citation omitted).

Plaintiff has alluded to no evidence of record coming within the scope of either of these categories.  Instead, her examples are nothing more than a recitation of her subjective complaints to her physician.  The actual objective medical findings on examination, however, are as related by the ALJ.  Thus, although plaintiff did indeed repeatedly present with complaints of shortness of breath, on examination Dr. Radley related that her "[b]reathing is effortless and normal."  (*See, e.g.*, Tr. 356, 380, 394.) Similarly, a pulmonary function test performed in September 2007 showed only mild obstructive airway disease, as to which the examining physician noted that plaintiff's "breathlessness seems far out of proportion to her rather mild" condition.  (Tr. 21, 342.) Additional testing conducted both before and after plaintiff's date last insured also revealed mild or normal findings.  (*See* Tr. 21-22, 419, 421, 534-535, 600.)  I can find no reversible error in the ALJ's conclusion that this evidence failed to support the highly restrictive limitations Dr. Radley purported were appropriate.

Plaintiff also takes issue with the ALJ's observation that Dr. Radley claimed plaintiff's extreme limitations had existed since 2003.  The ALJ noted that this period would have encompassed a time when plaintiff was still working, thereby further

7

undercutting the treating source opinion. *See* 20 C.F.R. § 404.1520(b) (claimant who is performing substantial gainful activity is not disabled regardless of medical condition, age, education, or work experience).  Plaintiff maintains that the fact that she earned 20 per cent less in 2003 than the year previous and nothing in 2004 somehow undercuts this deduction.  Not only is plaintiff's conclusion not self-evident, it is not fully supported by the record.  (***See*** Tr. 144 (showing that plaintiff did record earnings in 2004).) Moreover, plaintiff has made no effort to demonstrate that her earnings in these years fell below the level of substantial gainful activity, much less proffered anything to support a conclusion that her reduced earnings were attributable to her impairments, as opposed to other, unrelated, factors.  I therefore perceive no reversible error in the ALJ's conclusion that plaintiff's ability to work despite these allegedly disabling impairments undermines the weight appropriately afforded Dr. Radley's opinions.

Plaintiff also claims the ALJ erred in assigning little weight to the opinion of Dr. Lane Fairbairn, who stated in June 2010 that plaintiff could sit for no more than 20 minutes at a time for a total of no more than two hours a day, could stand and walk for no more than 10 minutes at a time no more than one hour a day, would need to lie down frequently throughout the day, and could be expected to be absent from work more than four times a month due to symptoms.  (Tr. 500-501.)  Again, the ALJ found these restrictions to be unsupported by the medical evidence, including the reports of specialists to whom Dr. Fairbairn referred plaintiff.  Thus, and although it would be improper for the ALJ to discredit a physician's assessment merely because it appeared to be grounded in the plaintiff's subjective report of symptoms, ***see Orender v.***

8

*Barnhart*, 2002 WL 1747501 at *6 (D. Kan. July 16, 2002), the ALJ here properly compared Dr. Fairbairn's opinion to the record evidence in making his determination of the weight to be assigned thereto.  There was no reversible error in this regard.

Plaintiff further faults the ALJ for failing to rehearse all the factors set forth in the regulations that effect the weight to be given medical source opinions.  *See* 20 C.F.R. § 1527(c).[2]  *See* **Social Security Ruling** 96-2p, 1996 WL 374188 at *4 (SSA July 2, 1996) (treating source opinion which is not entitled to controlling weight still entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527").  This rule, however, does not obligate the ALJ to recite as a litany each and every factor contemplated by the regulation.  *See Mestas v. Astrue*, 2010 WL 3604395 at *3 (D. Colo. Sept. 7, 2010).  An ALJ's suggestion that he considered all such factors is sufficient to substantiate the conclusion that he discharged his responsibility in this regard, at least insofar as the record suggests no reason to dispute it.  *See Cox v. Apfel*, 2000 WL 1472729 at * 8 (D. Kan. Feb. 24, 2000) (citing *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498-99 (10th Cir. 1992)).  Such is the case here.  (*See* Tr. 19.)

---

[2]  These factors include:

1.    the physician's length of treatment of the claimant;
2.    the physician's frequency of examination;
3.    the nature and extent of the treatment relationship;
4.    the support of the physician's opinion afforded by the medical evidence of record;
5.    the consistency of the opinion with the record as a whole; and
6.    the specialization of the treating physician.

20 C.F.R. § 404.1527(c)(2)-(6).

Plaintiff further suggests error in the ALJ's determination to rely on the opinion of the consultative examiner, Dr. William Qutub, arguing that the ALJ failed to account for Dr. Qutub's suggestion that plaintiff would need regular breaks "likely in 15 minute intervals per her history." (Tr. 436.)  However, the ALJ did limit plaintiff to no more than 15 minutes of standing or walking at one time (Tr. 19), which I find adequate to account for this limitation, especially in light of Dr. Qutub's further suggestion that plaintiff's "[p]hysical exam suggests she might be able to do more" (Tr. 436).

I thus find and conclude that the ALJ committed no reversible error in his consideration of the medical source opinions.  Plaintiff's argument that the ALJ further erred in failing to account for the restrictions suggested by her treating sources in formulating her residual functional capacity therefore fails with this premise.

Finally, plaintiff maintains that the ALJ erred in discrediting her subjective reports of disabling headaches.  The ALJ found headaches to be non-severe at step two of the sequential analysis.  *See* **Social Security Ruling 85-28**, 1985 WL 56856 at *3 (SSA 1985); **Hawkins v. Chater**, 113 F.3d 1162, 1169 (10th Cir. 1997) .[3]  He also considered the credibility of plaintiff's reports of disabling headaches in assessing her residual functional capacity.  He concluded that the record did not support plaintiff's insistence that her headaches imposed significant restrictions on her functional capacity prior to

---

[3]  Plaintiff does not assign error to the ALJ's determination in this regard, nor could she.  ***See Carpenter v. Astrue***, 537 F.3d 1264, 1266 (10th Cir. 2008) (failure to consider all plaintiff's impairments, both severe and non-severe, in combination at step two rendered harmless where ALJ determines that benefits cannot be denied at step two and proceeds to the next step of the sequential evaluation).

her date last insured.[4]

      "[C]redibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (quoting *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)).  Such is the case here.  The ALJ did not state, as plaintiff suggests, that plaintiff never complained of headaches prior to November, 2009.  Instead, he noted that plaintiff never complained of severe, frequent headaches accompanied by "black outs" prior to that date.  (Tr. 17, 21.)  He concluded, appropriately, that it was not "reasonable [to conclude] that the claimant would have had such severe symptoms as 'black outs' 10 days every month without having presented such complaints to any medical provider prior to November 2009, or at least making mention of such severe symptoms in any earlier treatment records."  (Tr. 17.)  The ALJ also noted inconsistencies in plaintiff's reports of her history of symptoms, including that her claim to have experienced headaches with black outs since age 14 encompassed the entire period of her working life.  (Tr. 17.)  The ALJ gave clear, specific, and legitimate reasons, tied to the evidence, as to why he did not find plaintiff's testimony entirely credible.  I find nothing in the record that would warrant reversal on this basis.

---

[4] Plaintiff also argues that the ALJ improperly relied on plaintiff's activities of daily living to support his conclusion that she was not credible.  Although activities of daily living do not necessarily translate to the ability to perform work-related activities on a sustained basis, *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993), they do bear on a plaintiff's credibility "to the extent that the level of activity is in fact inconsistent with the claimed limitations," *Ouellette v. Apfel*, 2000 WL 1262642 at *13 (N.D. Cal. Aug. 24, 2000).  This is precisely how the ALJ relied on plaintiff's activities of daily living in this case.  There was therefore no error in that regard.

## IV. ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through

the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated February 27, 2014, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

12